GREVNIN v. GREVNIN.

1. PARTNERSHIP—ACCOUNTING—AGREED SUM.

Where parties to suit for dissolution of partnership, accounting and receivership had agreed upon sum defendant had withdrawn in excess of amount withdrawn by plaintiff, such amount is not disturbed.

2. SAME—ACCOUNTING—FINDINGS OF FACT—EVIDENCE.

In suit between brothers for dissolution of their partnership, accounting and appointment of a receiver, record *held*, to contain competent evidence to support trial court's finding of fact as to all items of credit allowed plaintiff.

3. APPEAL AND ERROR—PREJUDICE—EVIDENCE.

In suit for dissolution of partnership between brothers who had been engaged in the scrap metal business for about 20 years, although the case was in court for a period of 29 days, during

much of which time defendant represented himself and record shows the hearing was conducted under most trying circumstances, record does not contain evidence of prejudice exercised by the trial court but does show the exercise on his part of patience and self-restraint to a marked degree.

4. SAME—APPELLANT'S BRIEF—STATEMENT OF FACTS.

Statement of facts comprising 156 pages of appellant's brief on appeal in partnership dissolution suit *held*, a clear violation of court rule requiring that such statement be concise (Court Rule No. 67, § 2 [1945]).

5. EQUITY—ADJOURNMENT—RETENTION OF COUNSEL.

Refusal of adjournment by trial court to permit defendant in partnership dissolution suit time to employ counsel *held*, not error where suit was in court for 29 days and it appears that during the course of the proceedings he-had employed several different counsel, had one towards the close of the trial and different counsel on appeal.

6. APPEAL AND ERROR—FINDING OF COURT—FRAUD—EVIDENCE—PARTIES.

Failure to find defendant entitled to an undivided one-half interest in parcel of real estate formerly owned by partnership of which plaintiff sought dissolution, because of alleged scheme between plaintiff and three other persons to defraud defendant, was not error where trial court's finding that property had been irretrievably lost by mortgage foreclosure and plaintiff's friends had acquired property and offered to resell it to him, but not defendant, is supported by record and the other persons involved were not parties hereto.

Appeal from Wayne; Toms (Robert M.), J. Submitted August 2, 1946. (Docket No. 61, Calendar No. 43,355.) Decided September 11, 1946.

Bill by Ruben Grevnin against Harry Grevnin for dissolution of partnership, appointment of receiver and an accounting. Cross bill by defendant, against plaintiff for an accounting. Decree for plaintiff. Defendant appeals. Affirmed.

*David I. Hubar*, for plaintiff.

*Louis A. Komjathy (Wendell Brown*, of counsel), for defendant.

SHARPE, J.  This is a suit for dissolution of a
partnership, for an accounting and for the appoint-
ment of a receiver.

The plaintiff and defendant are brothers and
have been engaged in the scrap metal smelting and
refining business as partners for more than 20
years. The business was formerly incorporated
under the name of National Smelting & Refining
Company, but it has at all times been treated as a
partnership. Their original principal business ven-
ture was the operation of a scrap yard located on
Illinois street in the city of Detroit, but as their
operations became successful, they extended their
activities and moved their operations to property
purchased by them on the Detroit river in the village
of Ecorse. During this period of time, the partner-
ship assets were used to purchase real estate in
Detroit, in Oakland county, northern Michigan and
Canada. During the depression of 1929 and there-
after, the partnership was unable to meet its var-
ious contract obligations on the Ecorse property,
as well as other collateral business ventures which
required instalment payments. The Ecorse prop-
erty and other properties were lost to the partner-
ship by reason of foreclosure.

Prior to the year 1936, defendant withdrew cash
amounts in excess of his weekly agreed salary. On
March 9, 1936, an agreement was executed between
the parties, the substance of which was an acknowl-
edgment by defendant that he had withdrawn from
the partnership the sum of $16,000 in excess of the
amount withdrawn by plaintiff. It also appears
that following the agreement above referred to, the
cash assets of the partnership were at low ebb, dur-
ing which time plaintiff refrained from cashing his
weekly checks. The amount of the uncashed checks
is $5,475. The property known as the Ecorse plant

was purchased from the Union Guardian Trust Company in 1923, but during the depression of 1929 the parties could not keep up their payments on the land contract. Foreclosure proceedings were instituted but in 1934 the property was reinstated in the name of the partnership. At that time there was a balance due on this property in the sum of $65,000 plus unpaid taxes which in 1937 amounted to approximately $38,000. At this time the Union Guardian Trust Company granted a new mortgage which called for payments of $6,500 per year. In 1937 Collateral Liquidation Company, successor to Union Guardian Trust Company, foreclosed the mortgage, but before the redemption period expired an agreement was reached whereby the redemption period was extended. The option in the agreement was not exercised and the partnership lost title to the property, see *Grevnin* v. *Collateral Liquidation, Inc.,* 302 Mich. 274.

Subsequent to the loss of the Ecorse property, the partnership continued in business, but could not agree upon methods of conducting business with the result that the assets of the partnership deteriorated in value. In May, 1942, plaintiff filed a bill in chancery asking for the dissolution of the partnership, the appointment of a receiver to conserve and liquidate the assets of the partnership and an injunction preventing defendant from interfering with certain properties owned by plaintiff.

Defendant filed an answer and denies the material allegations in the bill of complaint. Defendant also filed a cross bill of complaint in which it is alleged that the losses suffered by the partnership were due to the failure of plaintiff to cooperate in the sale of real estate when the same could have been sold with profit to the partnership.

The cause came on for trial and the trial court entered a decree dissolving the partnership and appointing a permanent receiver. The decree also provided that out of the partnership assets plaintiff was entitled to the following amounts over and above the amount defendant was to receive. The sum of $16,000 pursuant to the agreement of March 9, 1936, the sum of $5,475 representing salary checks issued to plaintiff but not cashed by him, the sum of $2,470 representing a sum paid by plaintiff to redeem a mortgage given by the partnership to one Mahler, and the further sum of $19,424 representing sums of money received by defendant and converted to his own use. The decree also provided that defendant was entitled to the following items of expense: the sum of $800 advanced by defendant in connection with the appeal in the case of *Grevnin v. Collateral Liquidation, Inc.,* and the sum of $525 advanced by defendant for the purpose of refinancing the purchase of the Ecorse property.

Defendant appeals and urges that the trial court was in error in allowing plaintiff a total credit of $45,909 in the partnership accounting less a credit of $1,325 in favor of defendant.

One of the principal items allowed plaintiff was the sum of $16,000. This amount represents the items agreed upon between the parties. We see no reason for questioning what the parties agreed upon. There is competent evidence to sustain the allowance of $5,475 representing unpaid salary checks and the amount of $2,470 representing a sum paid by plaintiff to redeem a mortgage. The sum of $19,424 represents a large number of checks drawn on the partnership business accounts and cashed by defendant, the proceeds of which were converted by him to his own use. There is compe-

tent evidence in the record to support the finding of fact by the trial court on all items of credit allowed plaintiff.

It is urged by defendant that the trial court was prejudiced against defendant because of the nature of the case involved and because defendant represented himself during the trial of a great portion of the case. We note that the case was in court for a period of 29 days. We find no evidence of prejudice exercised by the trial court. The record shows that the hearing was conducted under the most trying circumstances. It is our opinion that the trial court exercised patience and self-restraint to a marked degree. Moreover, this court has exercised patience in reading a "statement of facts" consisting of 156 pages, a clear violation of Court Rule No. 67, § 2, (1945).

It is also urged that the trial court erred in refusing to grant defendant additional time in which to engage an attorney to conduct the trial on his behalf. The record shows that during the course of these proceedings defendant has engaged the services of several different attorneys. Defendant had ample time to engage an attorney to conduct the trial. His election to proceed without the service of counsel is a matter of his own choice. It does appear that towards the close of the trial defendant engaged Mr. Shapero, a Detroit attorney, but on appeal has different counsel. Under the circumstances of this case there was no error on the part of the trial court in refusing an adjournment because defendant was not represented by counsel.

It is also urged that the trial court was in error in failing to find that defendant is entitled to an undivided one-half interest in the Ecorse property. Defendant claims that there was a scheme between plaintiff, Solomon, Rappaport and Longsdorf to

perpetrate a fraud upon defendant in the purchase of the Ecorse property.

In disposing of this claim, the trial court made the following finding of facts:

"The undisputed testimony shows that this property was irretrievably lost by mortgage foreclosure, and that the Union Guardian Trust Company acquired unassailable title in fee by mortgage foreclosure and the expiration of the period of redemption. Thereafter, the plaintiff induced a friend of his, Mr. Solomon, to purchase the property on contract from the trust company. At the same time under the order of Judge Merriam, the personal property was ordered sold at public auction and was bought by Rappaport and Longsdorf. This sale of personal property was later approved and made final by order of Judge Merriam. Both these purchasers testified that if Ruben Grevnin, the plaintiff, will pay them the amount which they have invested in the real and personal property, they will undertake to convey it to him. Neither, however, has any contract to that effect, and both assert that they can withdraw that offer at any time, stating that it was made solely on the basis of friendship for the plaintiff and that it is in no way a legally binding agreement. They state positively that they will not extend the benefit of any such offer to the defendant, Harry Grevnin, or to him and the plaintiff as a partnership. They are quite definite in asserting that they want no business dealings of any kind, directly or indirectly, with the defendant. This situation then is one in which Ruben had friends with money who were willing to obligate themselves out of motives of friendship for his benefit, but who were entirely unwilling to do the same for the defendant. It is obvious that Harry Grevnin had the same opportunity as his brother to recapture the assets which had been lost by foreclosure and sale, but because of lack of friends, funds or foresight he did not do so."

The record supports such a conclusion; moreover, Solomon, Rappaport and Longsdorf are not parties to this suit and a binding decree could not be enforced against them.

The decree of the trial court is affirmed, with costs to plaintiff.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.